UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| TICEY HAYES,<br>         Plaintiff,<br><br>         v.<br><br>BEHM, *et al.*,<br>         Defendants. | No. 3:25-cv-294 (SRU) |

**INITIAL REVIEW ORDER**

*Pro se* plaintiff Ticey Hayes, previously incarcerated at the Hartford Correctional Center ("Hartford CC"), Corrigan-Radgowski Correctional Center ("Corrigan CC"), and MacDougall-Walker Correctional Institution ("Walker CI"), filed this civil rights action under 42 U.S.C. § 1983.  Am. Compl., Doc. No. 20 at 2.  He names eight defendants (collectively, the "Defendants") in their individual and official capacities: Correctional Officer Behm ("Behm"); Correctional Officer Cyr ("Cyr"); Captain Concepcion ("Concepcion"); Security Risk Group ("SRG") Coordinator Captain Papoosha ("Papoosha"); Correctional Officer Reyes ("Reyes"); Lieutenant Borkowski ("Borkowski"); Acting District Administrator Jennifer Reis ("Reis"); and Walker CI Warden Jesus Guadarrama ("Warden Guadarrama").  *Id*. at 1, 3-4.  Hayes brings claims under the Eighth and the Fourteenth Amendments, alleging that while he was housed at Walker CI, he was unlawfully designated as a gang member in the SRG Program and was attacked by other inmates due to the Defendants' indifference to his safety.  *Id*. at 14-19.  Hayes seeks compensatory and punitive damages, injunctive relief, and declaratory relief.  *Id.* at 19.

**I.     Standard of Review**

Under 28 U.S.C. § 1915A, I must review prisoner civil complaints and dismiss any

portion of the complaint that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. That requirement applies both when the plaintiff pays the filing fee and when he proceeds *in forma pauperis*. *See Carr v. Dvorin*, 171 F.3d 115, 116 (2d Cir. 1999) (per curiam).

A civil complaint must include sufficient facts to afford defendants fair notice of the claims and the grounds upon which they are based and to demonstrate a plausible right to relief. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007). Although detailed allegations are not required, conclusory statements are insufficient. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Rather, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

Nevertheless, it is well-established that "[*p*]*ro se* complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (emphasis in original) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)). *See also Tracy v. Freshwater*, 623 F.3d 90, 101-02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants).

**II.   Factual Background**

On September 25, 2024, Hayes was brought to Walker CI's Restrictive Housing Unit ("RHU") and received a security risk group ("SRG") ticket. Am. Compl., Doc. No. 20 at 4 ¶ 1.[1] Correctional Officers Behm and Cyr interviewed Hayes and informed him that another inmate had materials suggesting that Hayes was affiliated with a gang. *Id.* at 4 ¶¶ 2-3. Having "just completed the SRG Program for the third time," Hayes said he was no longer a gang member. *Id.* at 4 ¶ 4. Behm and Cyr informed Hayes that "active gang members" told them that Hayes

---

[1] Hayes filed his initial complaint on February 27, 2025 and his amended complaint on May 15, 2025. *See generally* Compl., Doc. No. 1; Am. Compl., Doc. No. 20.

2

was "not blood anymore," and he was labeled "a dobb." *Id.* at 5 ¶ 5. Hayes confirmed that was true. *Id.* Behm and Cyr laughed and said they were told that if Hayes went "back to the gang block," he would "get [his] food ate" and be "jumped" by the other inmates. *Id.* at 5 ¶ 6. Hayes communicated to Behm and Cyr that he was not a gang member, he had done nothing to be placed back into the SRG program, and he would "fear for [his] life" if he was placed back in the SRG program. *Id.* at 5 ¶¶ 7-8. Behm and Cyr "left the interview laughing" because Hayes "looked terrified." *Id.* at 5 ¶ 9. Hayes was then "placed back in [his] RHU cell." *Id.* at 5 ¶ 10.

On October 1, 2024, Hayes notified mental health services that he felt his "safety and life [were] at risk," saying he would harm himself if he was placed back in the SRG program. *Id.* at 6 ¶ 11. Hayes was then placed on a mental health hold until October 10, 2024, at which point he was placed back in RHU. *Id.* at 6 ¶¶ 12-13. On October 11, Hayes informed the mental health team that he had self-harmed because he was afraid to return to the SRG Program. *Id.* at 6 ¶ 14. Hayes was again placed on a mental health hold, and Concepcion was "notified." *Id.*

On October 17, 2024, Hayes attended his SRG designation hearing and disputed the evidence against him. *Id.* at 6 ¶¶ 15-17. He presented a written statement from "the inmate who was caught with the SRG papers, saying . . . [Hayes had] nothing to do with the papers" and argued his electronic messages "had nothing to do with gangs at all." *Id.* at 6 ¶¶ 16-17. Borkowski and Reyes, Hayes's hearing officers, "agreed there[] [was] no evidence pointing clearly to gang affiliation but still found [Hayes] guilty of [his] SRG ticket and designated [him] 'blood.'" *Id.* at 6 ¶ 18. Hayes alerted them that he feared he would be assaulted if he was placed back in the SRG program. *Id.* at 6 ¶ 19. Reyes "told [Hayes] that during his investigation he heard of a plan by other inmates [in the SRG program] to jump" Hayes. *Id.*

Hayes was placed back into his RHU cell after the hearing. *Id.* at 7 ¶ 20. Later that

night, Hayes attempted to hang himself in his cell because he feared returning to the SRG program. *Id.* at 7 ¶¶ 21-22. Hayes was brought to an outside medical facility until the next morning; Concepcion was again notified. *Id.*

On October 21, 2024, Hayes was taken to the SRG program housing block. *Id.* at 7 ¶ 23. Hayes alleges that Concepcion did not "follow [the] phase 1 SRG protocol and put [Hayes] on [recreation] alone status" before determining in what group to place him. *Id.* at 7 ¶ 24. Hayes was handcuffed behind his back and "taken to the outside [recreation] yard with the same inmates" who Defendants knew threatened to assault him. *Id.* at 7-8 ¶¶ 25, 29.

Once in the recreation yard, Hayes remained in handcuffs while the other inmates' handcuffs were removed. *Id.* at 7 ¶ 26. Four of those inmates assaulted Hayes, using "their handcuffs as brass knuckles." *Id.* at 7 ¶ 27. The attack was severe; Hayes's injuries included a broken nose, black eyes, head swelling, a concussion, and three facial lacerations requiring stitches. *Id.* at 7-8 ¶¶ 27-31. After visiting the hospital for his injuries, Hayes was returned "within a few hours" to the SRG housing block where he continued to fear for his safety. *Id.* at 8 ¶¶ 30, 32. Hayes alleges the assault resulted in permanent scarring and skin discoloration, "blinding pain" if his nose is touched, consistent migraines, paranoia, and anxiety attacks. *Id.* at 9-10 ¶¶ 43-46.

Hayes was placed on "rec[reation] alone" status on October 22, 2024 and remained on that status until March 5, 2025 when he was sent to the "Corrigan CC gang unit." *Id.* at 8 ¶ 34, 10 ¶ 51. His recreation alone status prevented him from receiving recreation time; Hayes did not receive indoor or outdoor recreation after November 2024. *Id.* at 8 ¶¶ 34-35, 9 ¶ 41. It is unclear from his complaint whether he received recreation time after his transfer to Corrigan CC on March 5. Between November 2024 and March 5, 2025, Hayes alleges that he was only

permitted to leave his cell to shower, make three phone calls a week "inside a small phone cage," and visit with members of his immediate family twice a week. *Id.* at 8 ¶ 35, 9 ¶¶ 40-42. Hayes asserts these conditions are much more restrictive than those imposed on inmates in general population. *Id.* at 9 ¶¶ 37-42. He also alleges his designation prevented him from being eligible for early parole, earning good time credits, and enrolling in various rehabilitative programs. *Id.* at 8 ¶ 36. In the SRG program, he was threatened daily by other gang members and the correctional officers "laugh[ed]" at him. *Id.* at 9 ¶¶ 37-39.

On March 5, 2025, Hayes was removed from recreation alone status and sent to Corrigan CC. *Id.* at 10 ¶ 51. He alleges he was placed in the "gang unit" at Corrigan CC and the "administration knew other members of the same gang" that previously assaulted him were waiting to assault him again at Corrigan CC. *Id.* Hayes alleges that, before leaving Walker CI, Behm made comments about "a[]lot of bloods waiting on [Hayes]" and about Hayes filing a lawsuit against Behm and his colleagues. *Id.* at 10-11 ¶¶ 53-54. Once at Corrigan CC, another corrections staff member made comments about hoping Hayes could "survive in the unit" until after she went home so that she didn't have to do any paperwork, implying she knew Hayes's "safety was in jeopardy." *Id.* at 11 ¶ 55. Hayes describes how he was "jumped" by "blood gang members" soon after he arrived at Corrigan CC and how he felt that he had no choice but to fight the other inmates. *Id.* at 11-12 ¶¶ 56-61.

After the fight, Hayes requested to be placed in the general population. *Id.* at 12 ¶ 62. Instead, he was placed on involuntary protective custody status on March 10. *Id.* at 12 ¶ 64. Hayes alleges he was held for 35 days in RHU under involuntary protective custody review status without access to proper clothing, proper meals, his personal property, visits, and legal mail. *Id.* at 12 ¶¶ 65-67. He asserts that treatment was retaliation for filing his initial complaint,

doc. no. 1, because "staff made remarks about [Hayes] suing." *Id.* at 12 ¶ 65.  Additionally, he alleges that other inmates at Corrigan CC "repeatedly heard prison staff making comments" about knowing that inmates planned to assault Hayes once he arrived at Corrigan CC.  *Id.* at 13 ¶ 70.  Further, he claims "Papoosha and other prison officials continue[d] to show [blatant] disregard for [his] safety" by allowing him "to be placed in a unit where they knew" he would be assaulted.  *Id.* at 12 ¶ 69.

### III.   Discussion

I read Hayes's amended complaint as asserting First Amendment retaliation, Eighth Amendment deliberate indifference to safety, and Fourteenth Amendment procedural due process claims.  Am. Compl., Doc. No. 20 at 14-19.  He brings those claims against the Defendants in their individual and official capacities.  *Id*. at 1, 3-4.

    A.  <u>First Amendment Retaliation</u>

To state a retaliation claim, Hayes must allege facts establishing three elements: (1) he engaged in protected speech or conduct, (2) Defendants took an adverse action against him, and (3) there was a causal connection between the protected speech and the adverse action.  *Burns v. Martuscello*, 890 F.3d 77, 84 (2d Cir. 2018) (internal citation omitted).  Courts require retaliation claims to be supported by specific facts; conclusory allegations of retaliatory conduct are insufficient.  *See Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983).

Filing a lawsuit or grievance is a protected activity that satisfies the first element. *See Graham v. Henderson*, 89 F.3d 75, 80 (2d Cir. 1996) (holding prisoner's filing and pursuit of a grievance is protected activity).  Hayes alleges that, after he filed his initial complaint in the instant case, Behm made comments about "bloods waiting on [Hayes]" and Hayes filing a lawsuit against Behm and his colleagues.  Am. Compl., Doc. No. 20 at 11 ¶ 54.  Once at

6

Corrigan CC, Hayes was placed in the "gang unit" where "[the] administration knew . . . [gang] members" were waiting to assault him again. *Id.* at 10 ¶ 51. He also alleges that, after arriving at Corrigan CC, he was held for 35 days in in RHU under involuntary protective custody review status without access to proper clothing, proper meals, his personal property, visits and legal mail as retaliation because "staff made remarks about [Hayes] suing." *Id.* at 12 ¶ 65-68. However, he does not specify which of the Defendants, if any, made the comments about him suing. Nor does he allege any of the Defendants' actions directly resulted in his placement in the "gang unit" or RHU at Corrigan CC.

    I conclude that Hayes's allegations sufficiently state a retaliation claim against Behm because, based on Behm's alleged comments, Hayes describes a causal connection between filing his initial complaint and being placed in a unit where he could once again be assaulted. However, to the extent that Hayes seeks to bring retaliation claims against correctional officials for conduct at correctional institutions other than Walker CI, those claims cannot be raised here. If Hayes wishes to pursue retaliation claims against correctional officers at Corrigan CC, then he should properly raise them by filing a new complaint.

    B.  <u>Eighth Amendment Deliberate Indifference to Safety</u>

    The Eighth Amendment to the United States Constitution, applicable to the states through the Fourteenth Amendment, prohibits "cruel and unusual punishments." U.S. Const. amend. VIII; *Robinson v. California*, 370 U.S. 660, 666-67 (1962). The ban on cruel and unusual punishment "does not mandate comfortable prisons, . . . but neither does it permit inhumane ones." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (internal quotation marks and citations omitted). An Eighth Amendment claim related to the conditions of an inmate's confinement, often referred to as a "deliberate indifference" claim, is comprised of objective and subjective

7

elements. *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998). Objectively, an inmate must be deprived of a "basic human need[]," or be subjected to a "substantial risk of serious harm" to health or safety. *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981); *Farmer*, 511 U.S. at 834. Subjectively, a prison official must "know[] of and disregard[] an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837. Allegations of "mere negligence" are insufficient to plead a deliberate indifference claim. *Id.* at 835.

"[P]rison officials have a duty to protect prisoners from violence at the hands of other prisoners." *Walker v. Schult*, 717 F.3d 119, 128 (2d Cir. 2013) (quoting *Farmer*, 511 U.S. at 833); *see Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984) ("[Prison administrators] are under an obligation to take reasonable measures to guarantee the safety of the inmates themselves."). Constitutional liability attaches, however, only when a plaintiff can prove that an official acted with "deliberate indifference to a substantial risk of serious harm to an inmate." *Farmer*, 511 U.S. at 828 (internal quotation marks omitted). "In cases involving the failure to prevent an attack from another inmate, a prisoner may prove deliberate indifference by showing that the official had actual knowledge of a 'longstanding, pervasive, well-documented, or expressly noted' substantial risk of inmate attacks.'" *Nieman v. Cheney*, 2024 WL 4880710, at *3 (D. Conn. Nov. 25, 2024) (emphasis omitted) (quoting *Farmer*, 511 U.S. at 842-43).

Here, Hayes alleges that Behm and Cyr placed him in the SRG program despite having knowledge of the risk to his safety, including from the inmates who ultimately attacked Hayes. Am. Compl., Doc. No. 20 at 4-5 ¶¶ 2-9; *id.* at 14. Similarly, Hayes alleges Reyes and Borkowski knew that Hayes's safety would be at risk should he be placed in the SRG Program. *Id.* at 6 ¶¶ 15-19; *id.* at 14. He claims that Concepcion likewise had knowledge that Hayes feared for his safety if placed in the SRG program, yet he took no steps to ensure Hayes's safety. *Id.* at 6 ¶ 14,

8

7 ¶¶ 22-24; *id.* at 15.  Hayes alleges Papoosha, too, had knowledge that Hayes was a target for gang members in the SRG program, but he failed to take steps to ensure Hayes's safety. *Id.* at 15-16.  Additionally, Hayes claims Warden Guadarrama failed to ensure Hayes's safety when he allowed Hayes to be handcuffed behind his back among inmates who were not handcuffed and who Warden Guadarrama knew intended to injure Hayes.  *Id.* at 16, 18.  Hayes further alleges that Papoosha and Warden Guadarrama used reckless and dangerous procedures during recreation time, particularly by allowing inmates to be handcuffed, despite having the power to make the process safer.  *Id.* at 10 ¶¶ 47-48.

Hayes has sufficiently pled allegations to support a claim of Eighth Amendment deliberate indifference to safety against Behm, Cyr, Reyes, Borkowski, Concepcion, Papoosha, and Warden Guadarrama.  Hayes alleged facts suggesting those defendants had notice of Hayes's compromised safety before the attack in the recreation yard, and failed to protect Hayes from the attack.  *See* Nieman, 2024 WL 4880710, at *3.

Hayes's claim against Reis, however, cannot proceed.  The Second Circuit requires personal involvement of defendants in alleged constitutional deprivations as a prerequisite to damages awards in section 1983 claims.  *Farid v. Ellen*, 593 F.3d 233, 249 (2d Cir. 2010).  "[T]here is no special rule for supervisory liability" when assessing personal involvement. *Tangreti v. Bachman*, 983 F.3d 609, 618 (2d Cir. 2020).  A government or prison official is not personally involved in the violation of a plaintiff's constitutional rights simply by supervising "others who committed the violation." *Id.* at 619.  Rather, "a plaintiff must plead and prove 'that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'"  *Id.* at 618 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009)).

Nevertheless, a plaintiff may demonstrate a defendant's "personal involvement" through their creation of a policy or custom that sanctioned conduct amounting to a constitutional violation, or allowing such a policy or custom to continue. *See Harnage v. Dzurenda*, 2022 WL 972438, at *8 (D. Conn. Mar. 31, 2022); *Stone #1 v. Annucci*, 2021 WL 4463033, at *9 (S.D.N.Y. Sept. 28, 2021). "[C]onclusory claims that a supervisor did not respond to letters or grievances, . . . [are] insufficient to establish personal involvement." *Rogers v. Lamont*, 2022 WL 3716446, at *4 (D. Conn. Aug. 29, 2022) (internal citation and quotation marks omitted).

Hayes's only allegation related to Reis is that she received and denied his administrative appeal while he exhausted his administrative remedies. Am. Compl., Doc. No. 20 at 13, 16. Although Hayes claims that this shows Reis's awareness of the risk to Hayes's safety, I disagree and conclude that Hayes has not plausibly pleaded an Eighth Amendment claim against Reis. Accordingly, Hayes's Eighth Amendment claim against Reis is dismissed for failure to state a plausible claim.

C. Fourteenth Amendment Due Process

Hayes also alleges that Borkowski, Reyes, Papoosha, and Reis violated his due process rights by placing him into the SRG program based off "vague claims of gang affiliation" despite finding during his October 17, 2024 hearing that "there[] [was] no evidence pointing clearly to gang affiliation." *Id*. at 14-16; *id*. at 6 ¶¶ 15-18. Further, Hayes claims Papoosha violated his Fourteenth Amendment due process rights by classifying him as protective custody status at Corrigan CC without providing Hayes a hearing, as required by Connecticut Department of Correction Administrative Directive 9.9. *Id*. at 12 ¶¶ 64-69; *id.* at 18.

"[T]he Due Process Clause provides that certain substantive rights—life, liberty, and property—cannot be deprived except pursuant to constitutionally adequate procedures."

*Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985).  To state a claim for violation of his procedural due process rights, Hayes must allege facts showing that he had a protected liberty interest and that he was deprived of that interest without being afforded due process of law. *Walker v. Fischer*, 523 F. App'x 43, 44 (2d Cir. 2013) (citing *Giano v. Selsky*, 238 F.3d 223, 225 (2d Cir. 2001)).

      The Due Process Clause generally does not create a protected liberty interest if the conditions are "within the normal limits or range of custody which the conviction has authorized the State to impose." *Meachum v. Fano*, 427 U.S. 215, 225 (1976).  However, there are circumstances under which a state statute, policy, or regulation can create a protected liberty interest relating to conditions of confinement.  In *Sandin v. Conner*, 515 U.S. 472 (1995), for example, the Supreme Court held that a liberty interest warranting due process protection "will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, . . . nonetheless imposes [an] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id*. at 484.  Therefore, I must determine whether Hayes's confinement in the SRG program constituted an atypical and significant hardship.

      I conclude that Hayes has pled allegations sufficient to suggest that, while in the SRG program, he was exposed to atypical and significant conditions of confinement, including his very limited recreation time, limited visitations and phone use, and dangerous conditions. Additionally, courts in this district have found that inmates have a liberty interest in their SRG classification.  *See, e.g.*, *Velez-Shade v. Population Mgmt.*, 2019 WL 4674767, at *11 (D. Conn. Sept. 25, 2019) (holding incarcerated persons have "a liberty interest in avoiding designation as a security risk group member and the related placement in SRG.").  For purposes of initial review,

11

Hayes's allegations are sufficient to suggest that he was subjected to "atypical and significant hardship," thereby establishing a liberty interest in the determinations leading to his SRG affiliation and classification. *See Sandin*, 515 U.S. at 484.

Having established a sufficient liberty interest, Hayes must also allege facts suggesting the Defendants "deprived him of that interest without sufficient process." *Walker v. Fischer*, 523 F. App'x at 44. Different procedural protections apply depending on the nature of the hearing. *Bolden v. Alston*, 810 F.2d 353, 357 (2d Cir. 1987) (stating that "the level of procedural protection differs according to the purpose of the confinement"). At an administrative proceeding, an incarcerated person is entitled to "some notice of the charges against him and an opportunity to present his views [orally or in writing] to the prison official charged with deciding" the matter. *Hewitt v. Helms*, 459 U.S. 460, 476 (1983). In addition, due process requires that the decision be supported by "some evidence." *Superintendent Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 455 (1985). A decision to place an inmate on SRG status must not only be supported by "some evidence[;]" that evidence must also be reliable. *See Taylor v. Rodriguez*, 238 F.3d 188, 194 (2d Cir. 2001) (requiring an independent credibility assessment of informant testimony); *Muniz v. Cook*, 2021 WL 5919818, at *4 (D. Conn. Dec. 15, 2021) ("'Some evidence' really means 'some *reliable* evidence.'" (quoting *Elder v. McCarthy*, 967 F.3d 113, 129 (2d Cir. 2020) (emphasis in original)).

Hayes confirms he had an opportunity to present his views to the officials during his hearing. Am. Compl., Doc. No. 20 at 6 ¶¶ 15-18; *id.* at 14-16. However, he alleges that the evidence against him, such as his own electronic messages, was weak and that he presented compelling counter evidence. *Id.* Hayes asserts that Reyes and Borkowski even admitted during his October 17, 2024 hearing that "there[] [was] no evidence pointing clearly to gang affiliation."

*Id.* at 6 ¶ 18. Reyes and Borkowski placed Hayes in the SRG program despite a lack of reliable evidence indicating his gang affiliation. *Id.* at 6 ¶¶ 15-18.

At the initial review stage, Hayes's allegations are sufficient to support a reasonable inference that Borkowski's and Reyes's determination at his SRG designation hearing lacked "some evidence." *Taylor*, 238 F.3d 194. The lack of evidence proving Hayes's gang affiliation paired with their knowledge that Hayes would be attacked amounts to a constitutional violation. *See Tangreti*, 983 F.3d at 616.

Hayes also alleges Papoosha, as head of the SRG program, allowed Hayes to be designated based on faulty information. Am. Compl., Doc. No. 20 at 15-16. Additionally, he claims Papoosha violated his due process rights by classifying him as protective custody status without providing him with a hearing. *Id.* at 18. But Hayes does not allege facts suggesting that Papoosha was personally involved in either of those decisions. *Tangreti*, 983 F.3d at 618 (recognizing that a plaintiff must plead and prove that the supervising defendant's "own individual actions . . . violated the Constitution") (quoting *Iqbal*, 556 U.S. at 676) (internal quotation marks omitted). Nor does Hayes allege facts demonstrating that his 35 days in protective custody status was an atypical and significant hardship under *Sandin*. *See Colon v. Howard*, 215 F.3d 227, 232 (2d Cir. 2000) (directing courts to develop a detailed record concerning claims based on segregative "confinements of durations within the range bracketed by 101 days and 305 days"). Without pleading facts specifying Papoosha's involvement, the Fourteenth Amendment due process claim against him cannot proceed.

Finally, Hayes alleges Reis violated his Fourteenth Amendment rights by showing deliberate indifference to his safety and rights. Am. Compl., Doc. No. 20 at 16. However, as stated above, Hayes's only factual allegation against Reis is that she received and denied his

administrative appeal while he exhausted his administrative remedies. *Id.* at 13, 16. Accordingly Hayes's Fourteenth Amendment claim against Reis is dismissed.

Therefore, Hayes's Fourteenth Amendment due process claim against Borkowski and Reyes may proceed, but his Fourteenth Amendment due process claims against Papoosha and Reis are dismissed.

    D. <u>Individual Capacity claims</u>

Hayes sues all Defendants in both their individual and official capacities. Am. Compl., Doc. No. 20 at 1. To the extent he asserts official capacity claims for monetary damages against the Defendants, such claims are dismissed as barred by the Eleventh Amendment. *See Kentucky v. Graham*, 473 U.S. 159, 169 (1985).

Under section 1983, Hayes may sue for compensatory and punitive damages against Defendants in their individual capacities if he demonstrates each "defendant's personal involvement in the alleged constitutional deprivation." *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013). *See Smith v. Wade*, 461 U.S. 30, 56 (1983) ("[A] jury may be permitted to assess punitive damages in an action under § 1983 when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others. . . . [T]he underlying standard of liability for compensatory damages is one of recklessness.").

Hayes seeks "[c]ompensatory damages in the amount of $80,000 against each defendant, jointly and severally" and "[p]unitive damages in the amount of $40,000 against each defendant." Am. Compl., Doc. No. 20 at 19. As stated above, Hayes sufficiently pled allegations supporting: (1) a claim of First Amendment retaliation against Behm; (2) a claim of Eighth Amendment deliberate indifference to safety against Behm, Cyr, Reyes, Borkowski,

Concepcion, Papoosha, and Warden Guadarrama; and (3) a Fourteenth Amendment due process claim against Borkowski and Reyes.  Therefore, Hayes's claims for compensatory and punitive damages may proceed against the above defendants in their individual capacities.

E.  Official Capacity claims

A section 1983 plaintiff may sue state officials in their official capacities to the extent that they seek non-monetary, prospective relief.  *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 n.10 (1989).  "[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity."  *Kentucky v. Graham*, 473 U.S. 159, 166 (1985).

Claims for injunctive relief do not require a defendant to have personal involvement in the constitutional violation.  *See Smith v. Muccino*, 223 F. Supp. 2d 396, 403 (D. Conn. 2002) ("[P]ersonal involvement is not a prerequisite to injunctive relief, and such relief may be had against officers in their official capacity . . . .").  However, injunctive relief may only proceed against a defendant to the extent that a defendant has the power to remedy the alleged on-going constitutional violation.  *See Scozzari v. Santiago*, 2019 WL 1921858, at *6 (D. Conn. Apr. 29, 2019) (citing *Ex parte Young*, 209 U.S. 123, 157 (1908) (stating a defendant official must have some connection with enforcing an allegedly unconstitutional action).  Similarly, a claim for declaratory relief may proceed when it "alleges an ongoing violation of federal law and seeks relief properly characterized as prospective."  *Virginia Off. for Prot. & Advoc. v. Stewart*, 563 U.S. 247, 255 (2011) (internal citation and quotation marks omitted).

Hayes seeks an injunction ordering Papoosha to remove him from the SRG program and place him back in general population.  Am. Compl., Doc. No. 20 at 19.  Notably, Hayes is no longer incarcerated.  *See* Doc. No. 22.  Hayes's request for injunctive relief is moot because he is no longer in the SRG program or incarcerated in the Connecticut Department of Correction.  *See*

*Prins v. Coughlin*, 76 F.3d 504, 506 (2d Cir. 1996) ("[A] transfer from a prison facility moots [a claim] for injunctive relief against the transferring facility."). Therefore, I dismiss Hayes's claim for injunctive relief against Papoosha in his official capacity.

Hayes also seeks a declaration that the Defendants "violated [his] rights under the Constitution and laws of the United States." Am. Compl., Doc. No. 20 at 19. However, I have dismissed Hayes's official capacity claims against all the Defendants and Hayes may only proceed against the remaining Defendants with individual capacity claims. Moreover, even if Hayes were to ultimately prevail on a claim against a Defendant in his or her individual capacity, then a "verdict in his favor would necessarily reflect a finding that the defendants violated his constitutional rights." *Baltas v. Rizvani*, 2022 WL 17251761 at *6 (D. Conn. Nov. 28, 2022). Thus, a declaratory judgment would serve no purpose if granted. *Id.*

Accordingly, I dismiss Hayes's request for declaratory relief.

### IV. Motion to Appoint Counsel

Hayes has filed a motion to appoint counsel. *See generally* Doc. No. 16. Generally, a plaintiff is not entitled to court-appointed counsel in civil proceedings; and the Second Circuit has repeatedly cautioned against the routine appointment of counsel. *See, e.g., Hendricks v. Coughlin,* 114 F.3d 390, 393 (2d Cir. 1997); *Cooper v. A. Sargenti Co.,* 877 F.2d 170, 171-72 (2d Cir. 1989). *See also* D. Conn. L. Civ. R. 83.10(c)1. ("Pro bono counsel may be appointed *at the discretion of the presiding judge* upon motion or on the initiative of the presiding judge when the judge determines that the appointment will serve the interests of justice based upon factors such as (a) a party's apparent ability or inability to afford legal counsel, (b) the likelihood that counsel may be secured under alternative fee arrangements, and (c) the apparent merit of the party's claims or defenses.") (emphasis added). *But see Mustafa v. Stanley*, 2020 WL 6536910,

at *3 (D. Conn. Nov. 6, 2020) (appointing pro bono counsel despite the "early stage in the case" after concluding in the court's initial review order that the incarcerated plaintiff "made a plausible case").

The Second Circuit has held that, because volunteer lawyer time is not always readily available, a plaintiff seeking appointment of counsel must make a threshold showing that he "sought counsel and has been unable to obtain it." *McDonald v. Head Criminal Court Supervisor Officer,* 850 F.2d 121, 123 (2d Cir. 1988). A plaintiff must also demonstrate attempts to obtain assistance from the Inmates' Legal Aid Program ("ILAP") to show the court "he is unable to obtain legal assistance on his own." *Swinton v. Wright*, 2016 WL 3579075, at *2 (D. Conn. June 28, 2016) (finding that the plaintiff, who was declined representation by two law firms, failed to establish that he was unable to secure legal assistance because he did not attempt to contact ILAP).

Hayes's trust account statement shows he is unable to afford legal counsel. *See* Doc. No. 3. Although his motion to appoint counsel states that he "made repeated efforts" to secure legal representation "by way of phone calls and written letters," Hayes does not indicate whether he has attempted to obtain assistance from ILAP. Doc. No. 16 at 1.

Accordingly, Hayes's motion to appoint counsel is **denied without prejudice**, doc. no. 16. Hayes is directed to list the firms he has contacted seeking legal assistance but is not required to contact ILAP because he is no longer incarcerated.

V. **Conclusion**

In conclusion, Hayes may seek damages against the following defendants in their individual capacities based on his: (1) First Amendment retaliation claim against Behm; (2) Eighth Amendment deliberate indifference to safety claims against Behm, Cyr, Reyes,

Borkowski, Concepcion, Papoosha, and Warden Guadarrama; and (3) Fourteenth Amendment due process claim against Borkowski and Reyes. All other claims are **dismissed without prejudice**, and Reis is **terminated** as a defendant.

Hayes's motion to appoint counsel is **denied without prejudice**, doc. no. 16.

The Court enters the following additional orders:

**(1)** **Within twenty-one (21) days of this Order, the Clerk shall** contact the Department of Correction Office of Legal Affairs to ascertain current service addresses for remaining defendants: Behm, Cyr, Reyes, Borkowski, Concepcion, Papoosha, and Guadarrama, and mail a copy of the Complaint, this Order, and a waiver of service of process request packet to each defendant in his individual capacity at his confirmed address. On t**he thirty-fifth (35th) day after mailing, the Clerk shall** report to the Court on the status of each request. If any defendant fails to return the waiver request, the Clerk shall arrange for in-person service by the U.S. Marshals Service on the defendants in their individual capacities and the defendants shall be required to pay the cost of such service in accordance with Federal Rule of Civil Procedure 4(d).

**(2)** **The Clerk shall** send the plaintiff a copy of this Order.

**(3)** **The Clerk shall** send a courtesy copy of the complaint and this order to the Connecticut Attorney General and the Department of Correction Office of Legal Affairs.

**(4)** Defendants shall file a response to the Complaint, either an answer or motion to dismiss, **within sixty (60) days** from the date the Notice of Lawsuit and Waivers of Service of Summons forms are sent. If they choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claims recited above. They may also include all additional defenses permitted by the Federal Rules.

**(5)** Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be

completed within **seven months (210 days)** from the date of this order. Discovery requests need not be filed with the court.

**(6)** All motions for summary judgment shall be filed within **eight months (240 days)** from the date of this order.

**(7)** Pursuant to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within twenty-one (21) days of the date the motion was filed. If no response is filed, or the response is not timely, the dispositive motion can be granted

**(8)** If Hayes changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)(2) provides that Hayes MUST notify the Court. Failure to do so can result in the dismissal of the case. Hayes must give notice of a new address even if he is incarcerated. Hayes should write PLEASE NOTE MY NEW ADDRESS on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If Hayes has more than one pending case, he should indicate all case numbers in the notification of change of address. Hayes should also notify the defendants or the attorney for the defendants of his new address.

**(9)** The Clerk shall immediately enter the District of Connecticut Standing Order Re: Initial Discovery Disclosures concerning cases initiated by self-represented inmates and shall send a copy of the Standing Order to the parties.

So ordered.

Dated at Bridgeport, Connecticut, this **24th day of November 2025**.

/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge